## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 24 2019, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of K.G. & C.G. (Minor Children) | April 24, 2019 |
| and | Court of Appeals Case No. 18A-JT-2621 |
| Kr.G. (Father), | Appeal from the Spencer Circuit Court |
| *Appellant-Respondent,* | The Honorable Lucy Goffinet, Temporary Judge |
| v. | |
| Indiana Department of Child Services, | Trial Court Cause Nos. 74C01-1807-JT-193 74C01-1807-JT-194 |
| *Appellee-Petitioner.* | |

**Bradford, Judge.**

# Case Summary

[1] K.G. and C.G. (collectively, "the Children") were twice removed from their parents' care following instances of domestic violence between Ka.G. ("Mother") and Kr.G. ("Father") (collectively, "Parents"). The Children were eventually determined to be children in need of services ("CHINS") and Father was ordered to complete certain services.[1] Father, however, failed to successfully do so and the Department of Child Services ("DCS") petitioned to terminate Father's parental rights to the Children. Father appeared *pro se* at the fact-finding hearing after rejecting court-appointed counsel. Father appeals the termination of his parental rights to the Children, arguing that the juvenile court denied him due process by denying him the right to counsel. We affirm.

# Facts and Procedural History

[2] DCS first became involved with the Children and Parents after receiving a report that on March 30, 2015, Parents engaged in an episode of domestic violence during which K.G. was injured when he was hit by a door, Father's hand was cut, and Mother's face was injured. Parents were arrested and the

---

[1] Mother has voluntarily relinquished her parental rights in the Children and does not participate in this appeal.

Children were removed from their care. The case was closed in January of 2016, with Father being named the Children's primary caregiver.

[3] DCS again became involved with the family after receiving a report that on March 17, 2016, Parents "were engaged in domestic violence and there was alcohol involved and [Mother] was injured and sent to the hospital and [Father] had fled the scene with the [C]hildren in his care." Tr. p. 69. Soon thereafter, Father was arrested and the Children were removed from his care.

[4] On March 21, 2016, DCS filed petitions alleging that the Children were CHINS due to Parents engaging in domestic violence in front of the Children and Father being arrested. The juvenile court issued an order adjudicating the Children to be CHINS on June 10, 2016. Three days later, the juvenile court ordered Father to complete certain services.

[5] Approximately twenty-five months later, on July 24, 2018, DCS petitioned to terminate Father's parental rights to the Children. The juvenile court conducted an initial hearing on August 13, 2018, during which it informed Father that he had a right to counsel and that he could either (1) hire an attorney, (2) request a court-appointed attorney, or (3) choose to proceed without an attorney. Father indicated that he understood this right, rejected a court-appointed attorney, and stated that he intended to hire an attorney. Father again indicated that he understood that he had the right to an attorney during an August 27, 2018 status hearing, during which he also asked questions seemingly clarifying his responsibilities if he were to proceed without counsel.

The juvenile court conducted a fact-finding hearing on October 1, 2018. At the outset of this hearing, the juvenile court noted that Father appeared *pro se* and questioned Father about whether he was ready to proceed. Father answered affirmatively, saying "We can proceed." Tr. p. 30. Father then participated in the fact-finding hearing, testifying on his own behalf and cross-examining DCS's witnesses. At the conclusion of the hearing, the juvenile court issued an order granting DCS's petitions to terminate Father's parental rights to the Children.

## Discussion and Decision

At the outset, we note that in challenging the termination of his parental rights, Father does not challenge the juvenile court's findings or conclusions thereon. Father's sole contention is that he was denied the right to assistance of counsel during the fact-finding hearing.

> Due process protections bar state action that deprives a person of life, liberty, or property without a fair proceeding. It is unequivocal that the termination of a parent-child relationship by the State constitutes the deprivation of an important interest warranting deference and protection, and therefore when the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.

*In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (internal quotations omitted). Indiana Code sections 31-32-4-1 and 31-32-2-5 provide that a parent is entitled to be represented by counsel in proceedings to terminate the parent-child relationship. Indiana Code section 31-32-4-3 further provides that the juvenile

court "shall appoint counsel for the parent at the initial hearing or at any earlier time" if the parent "does not have an attorney who may represent [him] without a conflict of interest" and "has not lawfully waived [his] right to counsel." A parent lawfully waives his right to counsel if he does so "knowingly and voluntarily." Ind. Code § 31-32-5-5.

[8] Father's actions in this case demonstrate that he knowingly and voluntarily waived his right to counsel. During the initial hearing, the following exchange occurred with regard to Father's right to counsel:

> [The Court]: Sir, you are entitled to be represented by an attorney with regards to these matters. You may hire your own attorney to represent you or the Court will appoint counsel to represent you in this (sic) proceedings or if you wish, you may proceed without counsel.… Do you intend to hire your own attorney sir?
>
> [Father]:     No, Your Honor. I would like to have the same attorney that I had on the other cause numbers in the other CHINS matters. He has been – Walter Hagedorn has been sending me information on this – on these proceedings today. I would –
>
> [The Court]: Sir, not to interrupt you but Mr. Hagedorn has filed a Motion to Withdraw from your matters and so he has asked not to be appointed on these cases. Are you asking for court appointed counsel sir?
>
> [Father]:     No, I am not. I will obtain my own counsel.
>
> [The Court]: Okay. I'll show that [Father] is going to hire his own attorney to represent him in this matter.

Tr. pp. 14–15. During a subsequent status hearing, the juvenile court informed Father that the next step was a fact-finding hearing and that "You absolutely, if you're going to have an attorney, need to have one by this date." Tr. p. 22. Father indicated that he understood, saying "Okay." Tr. p. 22. Father further clarified that "Everything else is pretty much then on me as far as getting ahold of witnesses and stuff like that." Tr. p. 23. The juvenile court indicated "That's correct." Tr. p. 23. Father appeared *pro se* at the October 1, 2018 fact-finding hearing. When the juvenile court inquired into whether Father was prepared to proceed with the fact-finding hearing, Father responded "Yes" and "We can proceed." Tr. p. 30. Father then participated in the fact-finding hearing, testifying on his own behalf and cross-examining DCS's witnesses.

[9] Although Father claims that he took no affirmative action to forego his right to counsel, his actions prove otherwise. Father was informed by the juvenile court that he had a right to counsel and that he could either hire his own counsel, request court-appointed counsel, or proceed without counsel. At his initial hearing, Father explicitly rejected court-appointed counsel and indicated that he would hire counsel. He subsequently acted in a manner consistent with a decision to represent himself rather than hiring counsel. Further, nothing in the record suggests that Father communicated any desire for the court to appoint counsel after his explicit rejection of court-appointed counsel. Father argues that the juvenile court should have taken further action to verify his waiver of counsel prior to the beginning of his final hearing. While this might have been

the better practice, we do not believe this was necessary given Father's waiver of counsel at his initial hearing.

[10] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.